IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

MICHAEL DAVID GOODWIN,     §
    §
      Petitioner,     §
    §
v.     §       2:14-CV-91
    §
UNITED STATES OF AMERICA,     §
    §
      Respondent,     §

## REPORT AND RECOMMENDATION TO DENY
## MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE

Petitioner MICHAEL DAVID GOODWIN (hereinafter "GOODWIN") has filed with this

Court a Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255.  On July

6 and July 7, 2016, the Court conducted an evidentiary hearing. The evidentiary hearing

transcripts were docketed in this case as entries 64 and 65. Citations to the transcripts throughout

this Report and Recommendation will reference Docket Entry, Page Number, and Line(s) (i.e.

D.E. 64, p. 8, lines 1-3). GOODWIN was represented by retained counsel at the evidentiary

hearing, and several witnesses were called to testify.  For the reasons hereinafter expressed, the

undersigned United States Magistrate Judge is of the opinion GOODWIN is not entitled to relief

and recommends the Motion to Vacate, Set Aside, or Correct Sentence be DENIED.

I.
### FACTUAL AND PROCEDURAL HISTORY

On August 15, 2012, petitioner GOODWIN was indicted on eleven counts of Medicaid

Fraud pursuant to 18 U.S.C. § 1347 and § 2. Prior to the indictment petitioner had retained

counsel from Indiana, Mr. Clark Holesinger, to represent him and his spouse on forfeiture

matters relating to this same alleged scheme. After indictment Mr. Holesinger entered an

appearance on the criminal matter in this case for GOODWIN on August 22, 2016, as did co-counsel Mr. David Lee DeBoer. On August 23, 2016, William B. Kelly, III entered his appearance on behalf GOODWIN as well. Mr. Kelly was the only attorney local to Amarillo, Texas representing GOODWIN. Additional charges were brought by the government against GOODWIN in a Superseding Indictment filed September 12, 2016. The additional criminal violations alleged in the Superseding Indictment involved a conspiracy to commit Medicaid Fraud. Under the Superseding Indictment, the petitioner's spouse, Patricia Goodwin, and his office manager, Annette Hastings, were named as co-defendants and they faced conspiracy charges along with GOODWIN. On September 20, 2012, GOODWIN appeared with Mr. Kelly, his local counsel, and was arraigned on the September 2016 superseding indictment. At that hearing, GOODWIN stated he read and understood the new charges in the superseding indictment. GOODWIN'S attorneys filed motions to dismiss both the original indictment and the superseding indictment, but those motions were denied.

On November 8, 2012 the District Judge held a Rule 44(c) hearing on the propriety of joint representation because Mr. Holesinger and Mr. Kelly were jointly representing both MICHAEL DAVID GOODWIN, petitioner, and his wife, Patricia. At the hearing, the Court extensively questioned GOODWIN regarding possible conflicts of interest that could arise with continued joint representation. *See United States v. Michael David Goodwin*, 2:12-CR-0037 (1), D.E. 153, pp. 11-17. GOODWIN repeatedly assured the Court that he wished to proceed with joint representation and he understood the possible conflicts of interest. *Id.* GOODWIN gave the District Judge his reason for continuing with joint representation (of GOODWIN and his spouse) by Mr. Kelly and Mr. Holesinger as follows: "because of the length of time that we've discussed these issues, we feel comfortable with our counsel's recommendations and to proceed forward

with the situation is that we would both be represented by the same attorneys." *Id*. at p. 17, lines 6-10. Although the District Judge explicitly recommended separate counsel, joint representation was allowed to proceed. *Id*. at p. 18, lines 8-9; p. 19, lines 8-14. GOODWIN and his spouse were both advised to directly address the Court and request separate counsel if either GOODWIN or Patricia Goodwin believed there was a conflict. *Id*. at pp. 18-19.

On December 13, 2012 GOODWIN pleaded guilty to one count of Medicaid Fraud. The plea was pursuant to a plea bargain calling for the remaining charges against GOODWIN to be dismissed. In addition, the charges against his spouse, Patricia, and office manager, Annette Hastings, were to be dismissed as part of the plea agreement. Pursuant to the plea agreement, GOODWIN stipulated to the accuracy of the factual resume and acknowledged his plea of guilty was freely and voluntarily made and not the result of promises apart from those set forth in the plea agreement. GOODWIN was questioned by the District Judge at his rearraignment and he stated he was satisfied with his lawyer's (Mr. Kelly's) representation. *United States v. Michael David Goodwin*, 2:12-CR-0037 (1), D.E. 150, p. 22, lines 21-23. GOODWIN further stated he had reviewed the factual resume with his attorney "many times." *Id.* at pp. 28-29. Furthermore, GOODWIN signed the plea agreement stating that he had "received from his lawyer explanations satisfactory to him concerning each paragraph of this plea agreement, each of his rights affected by this agreement, and the alternatives available to him other than entering into this agreement," and that after conferring with his lawyer, concluded it was in his best interest to enter into the plea agreement and plead guilty rather than proceed to trial. *United States v. Michael David Goodwin*, 2:12-CR-0037 (1), D.E. 107. GOODWIN confirmed the terms of the plea agreement in open court and the Court accepted GOODWIN's plea and the plea agreement

and ordered a Presentence Investigation Report (PSR). On April 9, 2013, GOODWIN was sentenced to a term of 50 months imprisonment. No direct appeal was taken.

GOODWIN, acting *pro se*, filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody on April 14, 2014 [D.E. 1]. GOODWIN, still acting *pro se*, filed two subsequent motions for leave to amend the original Motion to Vacate on July 21, 2014, and July 31, 2014 [D.E. 10 and D.E. 12, respectively]. On January 23, 2016, GOODWIN, now represented by counsel, filed a Third Motion for Leave to Amend, superseding the original two motions for leave to amend [D.E. 19]. The government responded to the allegations in the original Motion to Vacate on May 28, 2014 [D.E. 6], and responded to the three motions for leave to amend on September 16, 2014, and March 2, 2016 [D.E. 15 and D.E. 22, respectively]. On July 13, 2016 the Court granted the petitioner's Third Motion for Leave to Amend, and the Clerk docketed the attached proposed Amended Motion to Vacate [D.E. 62], which became the controlling pleading. Also on July 13, 2016 the Court entered a Briefing Order requiring the parties to address certain issues by July 27, 2016 [D.E. 63]. The government filed its response to the briefing order on July 27, 2016 [D.E. 66], and petitioner through counsel filed a "Supplement to Brief in Support of Amended Motion" on that same date [D.E. 68].[1]

## II.
## PETITIONER'S ALLEGATIONS

In support of his contention that his conviction and sentence were imposed in violation of the Constitution or laws of the United States, petitioner contends he received ineffective assistance of counsel based upon the following:

---

[1] The petitioner's response to the briefing order does not address the issues set out by the Court in the briefing order; instead, the response once again sets forth the arguments in the petitioner's brief in support of the Third Motion for Leave to Amend, which was granted on July 13, 2016.

1.     GOODWIN was wholly without the assistance of counsel at his December 13, 2012 rearraignment hearing.

2.     GOODWIN'S guilty plea was involuntary, unintelligent and derived from deficient advice.

3.     Mr. Holesinger had an actual conflict of interest while representing GOODWIN because he was primarily concerned with concealing his (Holesinger's) illegal activities, including misappropriation of approximately $380,000 from GOODWIN.

4.     Mr. Holesinger failed to subject the government's case to meaningful adversarial testing.

5.     Mr. Holesinger failed to pursue GOODWIN'S claims of ownership in forfeiture proceedings, which negatively impacted his criminal case.

6.     Mr. Holesinger did not depose or interview important witnesses, who had information critical to his defense.

7.     Mr. Holesinger concealed the "Miller Report" by a defense expert, which was favorable and necessary to GOODWIN'S defense.

8.     Mr. Holesinger failed to examine the Medicaid claim filing practices of Dr. Charles Osborn, who sold his practice to GOODWIN.

9.     Counsels' failure to properly inform and discuss with defendant his plea agreement, factual resume, presentence report, and appellate rights constituted ineffective assistance. Additionally, the failure to file an appeal was a deficient performance by counsel.

III.

<u>STANDARD OF REVIEW</u>

In its May 28, 2014 response to petitioner's Motion to Vacate, the government fully and accurately sets out, at pages 6-9, the appropriate standard of review for motions brought under 28 U.S.C. § 2255. In its September 16, 2014 response to petitioner's Third Motion for Leave to Amend, the government accurately sets out, at pages 2-4, the appropriate limitations on such motions and procedures to amend such motions. These standards and limitations are applicable to this case.

IV.

MERITS

In *Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), the Supreme Court established a two-part test for analyzing ineffective assistance of counsel claims. The *Strickland* test, which applies to ineffective assistance of counsel claims in guilty plea cases, requires a prisoner to demonstrate defense counsel's performance was both deficient and prejudicial. *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985).

An attorney's performance is considered deficient if the attorney made errors so serious he or she was not functioning as the "counsel" guaranteed to the defendant by the Sixth Amendment to the United States Constitution. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2064. That is, counsel's performance must have fallen below the standards of reasonably competent representation as determined by the norms of the profession. A reviewing court's scrutiny of trial counsel's performance is highly deferential, with a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance. *Id.* at 689, 104 S. Ct. at 2065.

In the context of a guilty plea, a defendant can satisfy the prejudice prong of *Strickland* by demonstrating that but for counsel's deficient performance, a reasonable probability exists that the defendant would not have pled guilty, but would have insisted on a trial. *Hill*, 474 U.S. at 58, 106 S.Ct. at 370. Similarly, in the context of a procedurally defaulted appeal, a defendant can satisfy the prejudice prong by demonstrating that "there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, [defendant] would have timely appealed." *Roe v. Flores-Ortega*, 528 U.S. 470, 477, 120 S.Ct. 1029, 1035, 145 L.Ed.2d 985 (2000).

**A.** **GOODWIN was not wholly without counsel nor was he completely denied counsel at his Rearraignment on December 13, 2012.**

GOODWIN first argues Mr. Holesinger's failure to attend the rearraignment constituted a complete denial of counsel at a critical stage of the proceeding. While both sides agree that rearraignment was a critical stage, GOODWIN's argument fails to account for his statements to the District Court during his Rule 44 hearing acknowledging Mr. Kelly and Mr. Holesinger jointly represented both him and his spouse. *United States v. Michael David Goodwin*, 2:12-CR-0037 (1), D.E. 153, p. 17, lines 6-10. His argument also ignores the fact that Mr. Kelly was with him at his rearraignment.[2] At numerous times throughout his criminal case, GOODWIN acknowledged Mr. Kelly as one of his attorneys to the Judge, including at the rearraignment hearing. *United States v. Michael David Goodwin*, 2:12-CR-0037 (1), D.E. 150, p. 22, lines 19-23. Additionally, Mr. Kelly testified at the evidentiary hearing that he advised GOODWIN of the *consequences* of pleading guilty although he refrained from advising him of the propriety of pleading guilty versus going to trial. D.E. 64, p. 70, lines 8-22.

GOODWIN argues the *Strickland* standard does not apply to his claim because Mr. Holesinger's absence from his guilty plea constitutes an exception to the *Strickland* standard articulated under *Cronic*.[3] *Cronic*, however, deals with the *constructive* denial of counsel, not the absence of counsel. *Id.* The total absence of counsel is presumed to be prejudicial without a properly accepted waiver. The burden to show that a defendant has been constructively denied counsel is on the movant. *Childress v. Johnson*, 103 F.3d 1221, 1228, 1231-32 (5th Cir. 1997).

---

[2] Attorney Kelly also appeared at the arraignment on the superseding indictment on September 20, 2012, where GOODWIN acknowledged Kelly as "his attorney." *See United States v. Michael David Goodwin*, 2:12-CR-0037 (1), D.E. 51.

[3] *United States v. Cronic*, 466 U.S. 648, 104 S. Ct. 2039, 80 L.Ed.2d 657 (1984) (issued the same day as *Strickland*).

GOODWIN was never totally without counsel in that he acknowledged, to the Judge, that Mr. Kelly was his attorney at the rearraignment. GOODWIN further claims that the presence of attorney William E. Kelly III at his rearraignment hearing, rather than the presence of his Indiana counsel Clark Holesinger, constituted a denial of counsel because Mr. Kelly had claimed in an affidavit that he did not represent GOODWIN and GOODWIN believed he was not represented by Mr. Kelly at that hearing. D.E. 65, p. 9, lines 20-25; p. 10, lines 1-16. Although an affidavit submitted by Mr. Kelly after the Motion to Vacate was filed does, on its face, limit his representation of GOODWIN, Mr. Kelly testified and explained his affidavit and his representation of GOODWIN as "local counsel" during the evidentiary hearing.[4] As such, Mr. Kelly testified he was present at the rearraignment hearing to protect GOODWIN's constitutional rights and advise him if he (GOODWIN) had questions regarding information contained in plea documents that he had reviewed with GOODWIN. D.E. 64, p. 78, lines 1-14; p. 84, lines 5-7; p. 86, lines 17-25. Mr. Kelly did state that in the event GOODWIN had questions regarding whether to accept a guilty plea at all, Mr. Kelly would have contacted Mr. Holesinger or asked the Judge to allow GOODWIN to contact him, but Mr. Kelly stated GOODWIN never raised any questions regarding the plea at the rearraignment. D.E. 64, p. 78, lines 1-14. Mr. Kelly testified GOODWIN understood he could call Mr. Holesinger if he had a question during the plea. *Id.*

---

[4] Mr. Kelly's affidavit does not clarify what "responsibilities as legal counsel" he had to GOODWIN, but it does confirm the attorney/client relationship. As noted above, those responsibilities did not include advice on whether to accept a guilty plea or proceed to trial, as Mr. Kelly determined such advice would create a conflict of interest for Kelly in advising co-defendant, Patricia Goodwin, regarding her case, and would also create a conflict of interest in representing Mr. GOODWIN as local counsel. Mr. Kelly explained during testimony that should the case have gone to trial, he would have represented only Patricia Goodwin and withdrawn from petitioner's case entirely. Mr. Kelly testified that Mr. Holesinger had reviewed the plea agreement and factual resume with GOODWIN prior to the rearraignment. D.E. 64, p. 69, lines 3-8. Mr. Holesinger also testified he reviewed the documents with GOODWIN before the plea. D.E. 64, p. 106, lines 2-12.

GOODWIN has failed to meet his burden showing he was completely denied counsel at his rearraignment. The presence of Mr. Kelly as local counsel was sufficient to protect GOODWIN's constitutional rights at that hearing.

**B.    GOODWIN entered an intelligent and voluntary guilty plea.**

A guilty plea is valid if entered voluntarily, knowingly and intelligently and with "sufficient awareness of the relevant circumstances and likely consequences." *Bradshaw v. Stumpf*, 545 U.S. 175, 183, 125 S.Ct. 2398, 162 L.Ed.2d 143 (2005). There are three major aspects of a proper guilty plea: (1) the absence of coercion; (2) a full understanding of the charges; and (3) a realistic appreciation of the consequences of the plea. *United States v. Gracia*, 983 F.2d 625, 627-28 (5th Cir. 1993). The constitution "does not require complete knowledge of the relevant circumstances, but permits a court to accept a guilty plea, with its accompanying waiver of various constitutional rights, despite various forms of misapprehension under which a defendant might labor." *United States v. Ruiz*, 536 U.S. 622, 630 (2002) (internal marks omitted). In this case, the criminal acts committed by GOODWIN's Indiana counsel, Mr. Holesinger, require the Court to carefully and stringently consider this claim and whether counsel's illegal activities affected GOODWIN's plea and whether such impacted GOODWIN's decision to accept a guilty plea. While the burden is on GOODWIN to show that his guilty plea was the result of deficient performance on the part of his attorney, and while the Court must give weight to statements made under oath by GOODWIN during the rearraignment and Rule 44 hearings, the criminal charges against Mr. Holesinger require close scrutiny of the ineffective assistance of counsel claims against Holesinger. Even so, the Court can give greater weight to GOODWIN's rearraignment testimony acknowledging that Mr. Kelly (and/or other counsel) discussed the terms of the plea agreement and factual resume with GOODWIN "many times"

and that he (GOODWIN) had read the factual resume and plea agreement prior to the plea, rather than to GOODWIN's testimony at the evidentiary hearing that he believed he was wholly without counsel at rearraignment and could not ask any questions of Mr. Kelly. *See United States v. Cothran*, 302 F.3d 279, 284 (5th Cir.2002) (giving statements during plea "colloquy greater weight than unsupported, after-the-fact, self-serving assertions").

In determining whether a guilty plea is voluntary, a court must determine that the plea was not the result of force, threats, improper promises, misrepresentations, or coercion. *United States v. Amaya*, 111 F.3d 386, 389 (5th Cir. 1997). Plea colloquies are "solemn declarations in open court" which carry "a strong presumption of verity." *United States v. Palmer*, 456 F.3d 484, 491 (5th Cir. 2006) (citing *United States v. Adam,* 296 F.3d 327, 333 (5th Cir. 2002); *United States v. Lampazianie*, 251 F.3d 519, 524 (5th Cir. 2001)). Additionally, the "representations of the defendant, his lawyer, and the prosecutor . . . in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). When a signed plea agreement that is unambiguous is submitted at the same time as a guilty plea in open court, the plea agreement is "accorded great evidentiary weight." *United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994). Later statements that are self-serving, unsupported, and after-the-fact and which contradict the statements made in plea agreements or in open court during acceptance of a guilty plea will fail to overcome the "formidable barrier" created by the representations in the plea agreement. *Allison*, 431 U.S. at 74. When a prisoner is refuting specific testimony given under oath at a plea hearing, he must "offer specific factual allegations supported by the affidavit of a *reliable* third person" to even call into question the statements made under oath. *United States v. Fuller,* 769 F.2d 1095, 1099 (5th Cir. 1985).

GOODWIN'S claim that his guilty plea was unintelligent and involuntary is conclusory and does not set forth specific factual allegations to amount to a constitutional violation. His claims in his Amended Motion to Vacate regarding Mr. Holesinger's misrepresentations regarding possible sentencing, Mr. Holesinger's failure to advise him regarding the plea agreement, factual resume, superseding indictment, and other documents, and Mr. Holesinger's failure to give credence to GOODWIN'S claims of actual innocence are not supported by reliable evidence and these claims contradict the statements GOODWIN made in his plea agreement and in open court at his rearraignment. *See United States v. Michael David Goodwin*, 2:12-CR-0037 (1), D.E. 150, p. 24, lines 1-8; p. 26, lines 3-4 and 21-22. The undersigned Magistrate Judge cannot give credence to GOODWIN's after-the-fact statements that Mr. Holesinger did not review documents with him, when GOODWIN informed the court under oath that either Mr. Holesinger or Mr. Kelly had in fact reviewed documents with him prior to his plea. *Id.* at pp. 28-29. GOODWIN's claims that Mr. Holesinger had told him, on the day before his December 13, 2012 rearraignment, to "just say yes" to all the District Judge's questions are contradicted by statements GOODWIN made during rearraignment. *Id.* For example, when asked if he had reviewed the factual resume with his attorney prior to signing it, he did not answer "yes," but rather answered "many times, your honor." *Id.* at p. 29, line 1.

GOODWIN also claimed Mr. Holesinger told him that he had insufficient funds to put forth a defense at trial, and it was this information that led GOODWIN to accept a plea of guilty. However, GOODWIN was advised of his right to have appointed counsel at any time throughout his proceedings if he could no longer afford retained counsel or if a conflict arose and he could not afford separate counsel. *See United States v. Michael David Goodwin*, 2:12-CR-0037 (1), D.E. 153, p. 18-19. Additionally, the record reflects GOODWIN's decision to plead guilty was a

result of the plea agreement deadline to dismiss charges against his wife and office manager, not because of a lack of funds to proceed to trial. D.E. 65, p. 21, line 15-19. In a letter after his sentencing, GOODWIN stated that he accepted a guilty plea because he feared the prosecutor would proceed with charges against Patricia Goodwin and Annette Hastings and he wanted to "save them." *Id.* at D.E. 142, pp. 5-10.

GOODWIN'S testimony at the evidentiary hearing that he had never reviewed the superseding indictment, nor seen it, prior to his rearraignment hearing, is contradicted by the September 20, 2012 rearraignment in his criminal case where the Magistrate Judge issued an order finding GOODWIN acknowledged he had read, received, and understood the charges in the superseding indictment. GOODWIN also clearly indicated at the rearraignment hearing before the District Judge that he had read and understood the plea agreement prior to signing it and had reviewed it with his attorney. *See United States v. Michael David Goodwin*, 2:12-CR-0037 (1), D.E. 150, pp. 28-29. Furthermore, Mr. Kelly's testimony at the evidentiary hearing was that Mr. Kelly always reviews plea agreements in their entirety with defendants prior to executing a plea agreement and that he did so with GOODWIN. D.E. 64, pp. 69-70. Mr. Kelly further indicated that GOODWIN's *primary* concern throughout the case was in keeping his wife from going to prison and from being prosecuted. D.E. 64, p. 81, line 22 through p. 82, line 5. Mr. Kelly believed GOODWIN's guilty plea was consistent with his stated purpose of keeping his wife from being prosecuted and was not the result of any coercion. *Id.* at p. 82, lines 12-17.

C.    **There is not sufficient evidence to support the allegation that any conflict of interest affected Mr. Holesinger's representation of GOODWIN.**

The evidence presented at the evidentiary hearing and from documents of record in this case indicate that GOODWIN's attorney, Mr. Holesinger, was convicted of Wire Fraud and

Theft from a pattern of stealing and/or embezzling from his clients. This is not disputed by the government and in fact, Mr. Holesinger appeared at the evidentiary hearing pursuant to a writ and was in custody after having been sentenced. However, evidence presented at the evidentiary hearing was inadequate to show what amount, if any, Mr. Holesinger might have stolen or embezzled from GOODWIN. Although GOODWIN testified and presented records that he paid Mr. Holesinger approximately $400,000 over the course of the representation, GOODWIN has not established what amounts of money did not go to legitimate representation fees. In fact, it appears GOODWIN is claiming Mr. Holesinger embezzled approximately $380,000, meaning that GOODWIN believes less than $20,000 was spent on the defense of a complicated Medicaid Fraud case spanning over a year and a half. D.E. 65, pp. 39-40. The evidentiary hearing record shows Mr. Holesinger provided legitimate legal services to GOODWIN. He hired an expert, Ms. Miller, hired co-counsel, Mr. DeBoer, hired local counsel, William B. Kelly III, and traveled and investigated this case, and continued to provide representation from the date he was retained in mid-2012 through sentencing in April of 2013. Thus, GOODWIN has failed to show Mr. Holesinger actually embezzled from him, or, if he did, the amount Mr. Holesinger embezzled. D.E. 65, pp. 39-40. GOODWIN certainly has established Mr. Holesinger's bad acts against other clients but at most, he has only shown Mr. Holesinger might have stolen from GOODWIN. In any event, GOODWIN has failed to meet his burden to show that such behavior resulted in deficient performance of counsel and has further failed to prove how the deficient performance prejudiced GOODWIN's criminal case. Mr. Holesinger's conduct in defrauding other clients undermines confidence in the legal system and calls into question the representation provided by Mr. Holesinger to GOODWIN. The Court considers Mr. Holesinger's behavior reprehensible and has nothing positive to say about it. However, the burden remains on GOODWIN to show

both an actual deficient performance and resulting prejudice and the Court cannot impute the dishonesty of Mr. Holesinger in stealing from other clients to his representation of GOODWIN. It is GOODWIN's task to show prejudice by showing specific actions taken or not taken by Mr. Holesinger which would have altered the outcome or altered GOODWIN's decision to plead guilty. For example, GOODWIN did not show that the alleged embezzlement caused Mr. Holesinger to fail to hire an expert *and* that such failure would have changed the course of his case. This high burden falls on GOODWIN despite Mr. Holesinger's clearly egregious behavior that GOODWIN became aware of after-the-fact of the plea and sentencing and which has undermined GOODWIN's confidence in Mr. Holesinger's representation. GOODWIN, throughout his Motion to Vacate and at his evidentiary hearing, argued that his attorney, Mr. Holesinger, was convicted of wrongdoing in the handling of client funds. GOODWIN then leaps to the conclusion that this wrongdoing resulted in per se deficient performance in GOODWIN's representation which also resulted in per se prejudice in GOODWIN's criminal case. This automatic leap from proving an attorney's wrongdoing or criminal behavior to proving deficient performance and prejudice is misguided. Proving breach of the standard of care owed to a client and proving deficient performance are not identical processes or findings, nor is proving actual prejudice identical.

Since the *Cronic* standard does not apply to GOODWIN's claims GOODWIN must satisfy the two-part *Strickland* test in order to prevail on his motion. Under the *Strickland* standard for ineffective assistance, the court must determine whether counsel's performance was indeed deficient. To do so, the court can view "the reasonableness of counsel's actions" by "the defendant's own statements or actions." *Strickland,* 466 U.S. at 691. Courts should generally presume that counsel gave competent legal advice when advising a client to accept a guilty plea.

*See Padilla v. Kentucky*, 559 U.S. 356, 372, 130 S. Ct. 1473, 176 L.Ed.2d 284 (2010). In order to satisfy the second part of the *Strickland* test, it is up to GOODWIN to affirmatively prove prejudice. *Id*. at 693. To prove prejudice, GOODWIN must show that the result of the proceeding would have been different but for counsel's deficient performance. *Id*. at 694. It is not easy to meet the *Strickland* prejudice test when a defendant accepts a guilty plea because the defendant must later show that a decision to reject the guilty plea would have been rational under the circumstances. *Roe v. Flores-Ortega*, 528 U.S. 470, 480, 486, 120 S. Ct. 1029, 145 L.Ed.2d 985 (2000).

GOODWIN alleges he suffered the following constitutional violations due to ineffective assistance of counsel: lack of proper adversarial testing (discussed below, section D), misrepresentations regarding funds needed to go to trial based on counsel's conflict of interest resulting from theft of funds (discussed above, section B), misrepresentations regarding possible sentencing terms (discussed below, section I), failure to adequate discuss terms of the plea agreement and factual resume (discussed below, section I),  improper actions taken during civil forfeiture proceedings (discussed below, section E), and the failure to adequately pursue defenses, especially as it relates to the expert's report (discussed below, section G). GOODWIN's response to all of these alleged violations is that had they not have occurred, he would have proceeded to trial. D.E. 65, p. 18, lines 11-25. However, despite his conclusory claims that he would have "insisted on a trial," he has failed to show such an insistence would have been rational. He testified at the evidentiary hearing that "he wouldn't continue with someone stealing from me" if he had known about the alleged theft/embezzlement during the representation. D.E. 65, pp. 18-19. As set out above, however, he never established whether or what amount of funds were misappropriated. Mr. Holesinger's conviction documents, submitted

as exhibits to his Motion to Vacate, did not include charges that Mr. Holesinger misappropriated funds from GOODWIN and to the Court's knowledge GOODWIN was never named as a victim in a criminal case filed against Mr. Holesinger. GOODWIN must offer more than he has to establish that he has met the prejudice showing required under *Strickland*. Furthermore, he has failed to meet his burden to show these alleged constitutional violations even occurred, because they are contradicted by earlier statements made by GOODWIN and no supporting documentary evidence or testimony corroborates GOODWIN's change of testimony.

Once again, it is GOODWIN's burden of proof to show prejudice and GOODWIN's burden of proof to show that counsel's performance was in fact constitutionally deficient. GOODWIN's own actions and statements made under oath (see rearraignment transcripts citations above for references) reflect he (1) wanted to continue his case with Mr. Holesinger as counsel for both him and his spouse because he believed Mr. Holesinger had been investigating his case for many months and was satisfied with his representation; (2) understood possible sentencing terms; (3) understood his right to appointed counsel if he ran out of money; (4) understood his appellate rights, plea agreement, and factual resume; and (5) had been informed of the Miller report prior to plea and had the opportunity to discuss possible defenses (although none have been articulated in the hearing) with his attorney. D.E. 65, p. 11, lines 8-15 (as to the Miller report).

GOODWIN testified at the evidentiary hearing that he maintained his innocence until "the 13th." D.E. 65, p. 18, line 11 (referring to the date of rearraignment). Mr. Holesinger testified GOODWIN discussed going to trial with him and whether he (GOODWIN) could win, but GOODWIN also admitted to factual allegations by the government which established guilt under the superseding indictment. D.E. 64, pp. 171-172. Patricia Goodwin testified several

workers were the ones who were ultimately responsible for the fraudulent Medicaid billing scheme. D.E. 64, pp. 203-209. However, Mrs. Goodwin also testified she was aware that the practices of these workers was wrong (she told them "but you can't do that"). She then stated that she and GOODWIN were trying to first address sanitation issues and building moving issues before addressing Medicaid issues. D.E. 64, pp. 210-212; pp. 221 (stating "eventually I'll change everything" because the workers were "giving her a hard time"). Patricia Goodwin's testimony acknowledges awareness of wrongful and incorrect Medicaid billing and merely attempts to justify the delay in correcting the problem and contradicts an actual innocence claim. To establish actual innocence, the petitioner must demonstrate that, "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Schlup v. Delo*, 513 U.S. 298, 327-28, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). Indeed, "actual innocence means factual innocence, not mere legal insufficiency." *Id.* at 327-28. GOODWIN failed to establish a claim for factual innocence through testimony or evidence submitted at the evidentiary hearing.

Additionally, the evidence supports that the advice to plead guilty given by Mr. Holesinger was competent and sound. In the Government's Response to the Court's Briefing Order, the government sets forth the justifications for accepting a plea agreement. D.E. 66, pp. 2-7. The Court agrees that the justifications articulated by the government provide a sound basis for acceptance of the guilty plea. It was the testimony by Mr. Kelly and Mr. Holesinger that GOODWIN's stated purpose in accepting a guilty plea was to prevent his wife from facing prosecution. There is nothing GOODWIN said during the guilty plea proceedings which contradicts his sworn admission of guilt. Additionally, GOODWIN acknowledged at the evidentiary hearing that preventing his wife's prosecution was his stated purpose. GOODWIN has not shown it to be rational to reject a plea to a single count of a twelve count indictment, thus

limiting sentencing exposure, and avoiding subjecting two other individuals to criminal prosecution, when no evidence has been provided that GOODWIN was factually innocent. The court provided GOODWIN, through counsel, the opportunity through the briefing order, to address any actual innocence claims made by GOODWIN, and he failed to show actual innocence. In fact, testimony by Patricia Goodwin on cross examination confirms that GOODWIN billed for Medicaid procedures that he did not perform.[5] No evidence presented during this case indicates how pursuing ownership claims in the civil forfeiture proceedings would have altered the outcome of the criminal case. GOODWIN has never articulated what defenses, if any, he had to the government's allegations in the superseding indictment.

Perhaps most importantly, GOODWIN admitted that he had reviewed the factual resume "many times" and that the factual basis for the plea was true. Without a showing on the part of GOODWIN of a rational reason to reject the plea agreement or insist upon a trial, this Court has no basis to find that GOODWIN's rejection of the plea agreement would have been a rational choice.

**D.    The record supports that Mr. Holesinger subjected the government's case to adversarial testing and investigated the allegations in the indictment.**

A defendant in a criminal case can be *constructively* denied counsel if his attorney "entirely fails to subject the prosecution's case to meaningful adversarial testing." *Cronic*, 466 U.S. at 659. This occurs only when the attorney's handling of the case was entirely inadequate to the point that basically no assistance of counsel was provided at all. *Id.* at 654. In fact, *Cronic*

---

[5] It appears that Patricia Goodwin was stating that office staff members continued to bill unlawfully to "get back at" the Goodwins for practices that they did not like; however, Patricia Goodwin also appeared to admit to knowledge of all the problems with the billing practices and decided not to address them because they were too concerned with opening a new location and dealing with cleanliness problems, which is not a defense to the crimes charged.

applies only when counsel has *entirely* failed to challenge the prosecution's case. *Bell v. Cone*, 535 U.S. 685, 697, 122 S. Ct. 1843, 152 L.Ed.2d 914 (2002). If counsel provided some assistance throughout the proceedings and that assistance is meaningful, the *Cronic* standard is inapplicable and the *Strickland* standard, requiring a showing of prejudice, applies. *Cracker v. McCotter*, 805 F.2d 538, 542 (5th Cir. 1986).

GOODWIN has failed to show he was constructively denied counsel. The record indicates that Mr. Holesinger, along with co-counsel Mr. DeBoer, subjected the government's case to adversarial testing. D.E. 64, pp. 124-134. First, defense counsel filed motions to dismiss both the indictment and the superseding indictment. *See United States v. Michael David Goodwin*, 2:12-CR-0037(1), D.E. 60. Second, Mr. Holesinger met with government counsel and government agents investigating the case to discuss the charges and appeared to be well-informed about the case during the meeting. D.E. 65, pp. 56-57 (Agent Martin testified Mr. Holesinger and Mr. DeBoer had a good working knowledge of the case reflecting investigation and research prior to meeting with government agents). Third, Mr. Holesinger and Mr. DeBoer traveled to Amarillo to interview witnesses and conduct an investigation into the charges. D.E. 64, pp. 110-115; pp. 124-134. Fourth, Mr. Holesinger negotiated a plea bargain for GOODWIN to plead to only one count of an eleven count indictment, reducing the exposure of GOODWIN during sentencing. The negotiated plea agreement included dismissal of all charges against Patricia Goodwin and the office manager, Annette Hastings, which was a primary concern articulated by GOODWIN on several occasions. These actions, among others, indicate that Holesinger did indeed provide meaningful assistance throughout the case to GOODWIN.

GOODWIN has failed to meet his burden of showing that neither Mr. Holesinger, nor Mr. DeBoer subjected his case to adequate investigation and adversarial testing. The evidence

presented at the evidentiary hearing shows the investigation into the case was not only adequate, but was quite extensive.

**E.**  **No showing was made how the abandonment of GOODWIN'S civil forfeiture ownership claims affected the outcome of his criminal case; additionally, these claims do not relate back to his original Motion to Vacate.**

GOODWIN's statement that the pursuit of his ownership claims in his civil forfeiture proceeding would have led to further discovery, which would have revealed possible defenses to his criminal case, is entirely conclusory. GOODWIN has not advanced an actual defense that further investigation would have revealed. His wife's statements that they contacted a Medicaid billing representative and were "trying" to fix the Medicaid billing problems left by the prior staff does not indicate why GOODWIN did not stop billing Medicaid until he had full understanding of the billing procedures and does not reflect the likelihood of a possible defense to the charges. *See United States v. Michael David Goodwin*, 2:12-CR-0037 (1), D.E. 142, letter to U.S. District Judge Robinson (GOODWIN admits to knowledge of all the problems with sanitation and billing prior to purchasing the practice from Dr. Osborn).

The burden of proof is on GOODWIN to show how the abandonment of GOODWIN's civil forfeiture ownership claim led to prejudice in his criminal case. GOODWIN claims that pursuit of the civil forfeiture in his criminal case would have led to additional discovery in his criminal case. GOODWIN has failed to show any discovery he was not provided as part of his criminal case and how that discovery/evidence would have altered the outcome of his criminal case. As discussed above, GOODWIN has failed to articulate prejudice under *Strickland* if he cannot show how the deficient performance alleged (here, the failure to pursue the civil forfeiture) created a rational basis for rejecting the guilty plea.

In addition to GOODWIN's failure to meet his burden of proof on this claim, he also failed to articulate this claim as part of his original Motion to Vacate and the government has objected to its inclusion on the basis that it does not relate back to his original claims. The Court finds that this claim is barred under the statute of limitations, but in any event, the Court agrees with the government that no showing has been made how abandonment in the civil forfeiture case affected his decision to plead guilty. He was still planning to go to trial long after his civil forfeiture claims were abandoned, but changed his mind when his wife's charges were going to be dismissed and his own exposure was reduced.

**F.      Mr. Holesinger did interview witnesses and pursue possible defenses and no evidence was proffered how information obtained from any witness listed in the Motion to Vacate would have affected the outcome of the criminal case.**

GOODWIN has failed to meet his burden to show how interviewing any of the favorable or adversarial witnesses in his criminal case would have changed the outcome of his case. GOODWIN could have subpoenaed witnesses for his evidentiary hearing to prove they had information crucial to his defense if such information existed. Further, he could have obtained affidavits or stipulations regarding government witnesses. In fact, one of the lead case agents did testify at the evidentiary hearing and GOODWIN did not develop any information from the agent indicating that any witnesses had information that would have altered the outcome of GOODWIN's case. Without any proffered testimony from these witnesses, the Court cannot conclude that GOODWIN would have a rational basis to reject the plea agreement based on an unarticulated defense. It is GOODWIN's burden to establish what defense was available which would have rationally led to his insistence on trying his case.

**G.    Mr. Holesinger did not conceal the Miller Report from GOODWIN, he simply advised GOODWIN that the report was neutral to his defense. Additionally, this claim does not relate back to his original Motion to Vacate.**

GOODWIN gave conflicting testimony and statements regarding the Miller report. He acknowledged at one point that he had discussed it with his attorney prior to his plea and was told the Miller report was not favorable to his case. He later claimed he did not know about the report until after his sentencing. The government objected to testimony that referred to information contained in the Miller report as hearsay and the Miller report was not admitted into evidence at the evidentiary hearing.[6] The Miller report was not included as part of GOODWIN's original Motion to Vacate, but to the extent that it relates generally to the claim that Mr. Holesinger failed to investigate possible defenses, GOODWIN has failed to show prejudice by articulating what defenses GOODWIN had to the allegations in the superseding indictment and how Mr. Holesinger's alleged deficient performance affected the outcome of his guilty plea. Furthermore, no argument was made as to what *specific* information was contained in the report that would have been a rational basis for GOODWIN to insist upon a trial, rather than pleading guilty. Ms. Miller could have been subpoenaed to testify at the evidentiary hearing if she had specific information regarding a viable defense for GOODWIN's case.

In addition to GOODWIN's failure to meet his burden of proof on this claim, he also failed to articulate this claim as part of his original Motion to Vacate and the government has objected to its inclusion on the basis that it does not relate back to his original claims. The Court agrees that the report is not mentioned as part of his original Motion to Vacate, but as the

---

[6] GOODWIN did not offer the Miller Report as an exhibit during the evidentiary hearing so no ruling was made on its admissibility. The Miller Report was also attached to the original Motion to Amend.

information contained in the report is not before this Court and no specific arguments have been articulated to show how the report is favorable, the Court finds it unnecessary to further address the timeliness of the claim.

**H.    No evidence offered at the evidentiary hearing or in the record supports that Mr. Holesinger failed to investigate the Medicaid practices of Dr. Osborn, or how such an investigation would negate the charges against GOODWIN.**

GOODWIN separately articulates a claim stating that Mr. Holesinger failed to investigate practices by Dr. Charles Osborn. The testimony by Mr. Holesinger at the evidentiary hearing was that he was familiar with some practices of Dr. Osborn but he could not remember specifics of his investigation into the Medicare Fraud claims. In any event, GOODWIN has failed to articulate how an investigation into the practices of Dr. Osborn would have revealed a specific and/or viable defense in his criminal case and/or would have provided a rational basis for him to insist upon a trial. In addition, he has failed to show that Mr. Holesinger did not conduct such an investigation.

In a lengthy letter to the District Judge following the sentencing in his case, GOODWIN outlines many reasons he contends he is not culpable of Medicaid Fraud. While GOODWIN does in fact outline practices he contends were in existence prior to his involvement, he does not offer anything sufficient to establish a viable defense to criminal charges filed against him. *See United States v. Michael David Goodwin*, 2:12-CR-0037 (1), D.E. 142, pp. 5-10.

**I.    The record of the rearraignment hearing negates GOODWIN'S claims that Mr. Holesinger, and other counsel, failed to discuss the plea agreement, factual resume and sentencing terms with GOODWIN. Furthermore, GOODWIN stated he understood his appellate rights and did not wish to appeal on the record.**

GOODWIN's own statements at the arraignment, the Rule 44 hearing, the rearraignment, the sentencing hearing, and contained within written pleadings all contradict his statements made at the evidentiary hearing that he did not review these documents or these rights with counsel prior to accepting a guilty plea or prior to signing these documents. His after-the-fact statements at the evidentiary hearing are not supported by independent evidence, as required, for this court to give weight to his contradicting claims.

The District Judge at the rearraignment discussed the plea agreement with GOODWIN and after each section the judge covered, GOODWIN was asked if he discussed such terms with his counsel, if he had any questions, and if he understood the terms. *See United States v. Michael David Goodwin*, 2:12-CR-0037 (1), D.E. 150, pp. 20-27. GOODWIN acknowledged repeatedly that he understood the proceedings and wished to proceed with a guilty plea "with a heavy heart." *Id.* at p. 19, line 22. The evidence reflects GOODWIN's understanding of the plea documents, charging document, his right to a trial, and the consequences of his plea. GOODWIN has failed to establish any deficient performance on the part of counsel (either Mr. Holesinger or Mr. Kelly) in discussing the terms of the plea documents and charging instrument with him. In addition, GOODWIN would also be required to show prejudice based on failure to review these documents. The District Judge reviewed the plea documents and the superseding indictment with GOODWIN as well, which would negate a prejudice argument on this ground.

GOODWIN has not articulated deficient performance of Mr. Holesinger in failing to file an appeal of his case. The District Court Judge properly informed GOODWIN of the procedures for executing an appeal. If, as GOODWIN claims, Mr. Holesinger told GOODWIN that he would not file an appeal of GOODWIN's case, GOODWIN had the opportunity to properly affect an appeal on his own. Further, GOODWIN filed a Motion to Withdraw his Guilty Plea on April 14, 2014, referencing a letter written to the Court on April 23, 2013 (days after sentencing in his criminal case). Neither this Motion, nor the underlying letter, indicate Mr. Holesinger's refusal to appeal his case, nor did GOODWIN mention appeal in the Motion or letter.

V.
RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge that the Motion to Vacate, Set Aside, and Correct Sentence, filed by petitioner MICHAEL DAVID GOODWIN be DENIED.

VI.
INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this ___31st___ day of March, 2017.

CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

### \* <u>NOTICE OF RIGHT TO OBJECT</u> \*

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n,* 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds,* 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin,* 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).